YATES, Judge.
The Calhoun County Department of Human Resources (DHR) petitioned the circuit court, seeking permanent custody of M.L.V. and W.V. on February 9,1993, and February 19,1993, respectively. The children had previously been found by the court to be depen *817 dent and were in the temporary custody of DHR. The parental rights of the father of M.L.V. were terminated “by agreement” on August 31,1993. After a hearing, the parental rights of the father of W.V., and of the mother of both children, were terminated on November 1,1993. Only the mother appeals.
We note that the mother had three other children, none of whom was in her custody at the time of the hearing. One of those three children was living with its paternal grandmother; the other two children were living with their maternal grandparents. We further note that, although the mother alleges that from age 12 to 19 she was sexually molested by her alcoholic father and that her mother “encouraged him in these activities,” she entrusted the care of two of her children to this couple. Additionally, she acknowledged that she had abused her oldest daughter (one of the three children not at issue in this appeal) and that she has “flashbacks” of those incidents of abuse.
W.V. alleged that the mother sexually molested him. The mother first confessed to molesting her son, then later denied the act, and further denied that she had confessed to having done it; W.V. continued to maintain that she had molested him. W.V. has asthma and borderline cerebral palsy and requires special care. When he was first born, he was removed from the mother’s care because she could not meet his special needs. DHR worked with the mother and taught her how to care for him and then returned him to her custody, where he remained for approximately six years, until he was again removed and placed in foster care.
The mother has a long history of psychiatric difficulties. Testimony revealed that in March 1992, in reckless disregard for the life and safety of others, she drove down a busy street, running red lights, because she “wanted to die.” She was pregnant with M.L.V. at the time; he was born several days later and was placed in foster care.
Robert A. Storjohann, Ph.D., prepared a report on February 18, 1992, after performing psychological evaluations on the mother. He noted that at the time he saw her she was pregnant and, therefore, unable “to take psychotropic medications to control her psychiatric difficulties.” Dr. Storjohann concluded:
“She apparently has had long-standing personality and coping deficits as well as significant affective disturbance.
“... It appears as though she has a mixed personality disorder which is quite severe in its presentation. It appears as though she had prominent schizotypal, avoidant, dependent, and schizoid personality traits which are evidenced most of the time.
“... [S]he is considered to be competent to make her own decisions and understand what is going on around her. The only thing that might interfere with that is her severe personality dysfunction. [The mother] is clearly in need of ongoing psychiatric treatment to include chemotherapeutic intervention and psychotherapy.”
Darlene Davis, a licensed professional counselor who had counseled the mother, testified that because “a schizoaffective diagnosis is one of the most serious diagnoses that we could be treating,” it was difficult to stabilize the mother’s condition with medication. She went on to state, “We’re looking at many years ... with a success rate being fairly poor for a serious behavior disorder and with the combination [of problems] that [the mother] has, we’re looking at even more difficulties.” In addition to counselling the mother, Ms. Davis had also conducted counseling and therapy sessions with W.V. It was her opinion that W.V. should not be returned to the mother.
Frances Johnson, a licensed counselor, testified that as recently as May 1993, the mother had “had a very difficult time” and “needed quite a bit of staff attention” just to be able to take care of herself. Ms. Johnson was working with the mother to help her “cope better on a day-to-day basis with day-to-day living skills” and to “help expand her support system ... so that she can form more stable friendships.” It was Ms. Johnson’s opinion that the mother had “a severe mental illness” and that “she definitely needs some day-to-day contact with the mental health system.”
Karen Sanford, a DHR social worker, testified that the Department had been working *818 with the mother since 1978, providing “homemaker services, mental health counseling, day-care, home visits, foster care, and parents anonymous and parenting classes.” However, she stated that none of those services had brought the mother to the level of functioning that would permit her to take care of her children. It was Ms. Sanford’s opinion that it was in the best interests of the children to terminate parental rights. She testified that the children were still young enough to form attachments with people, but that that would change as they grew older, and that they “have a great need for stability ... and permanence in their lives.”
This court has previously stated:
“When the State seeks to terminate parental rights, the trial court must make several findings. First, the trial court must determine from clear and convincing evidence that the child is dependent. Second, the trial court must find that no viable alternatives exist other than termination of parental rights.”
M.J.G.L. v. State Dep’t of Human Resources, 587 So.2d 1004, 1005 (Ala.Civ.App.1991) (citations omitted). Although the mother contends that DHR failed to prove that there were no viable alternatives to the termination of her parental rights, Ms. Sanford testified that relative resources in Texas were explored by the previous ease worker and that “there were none available to take care of [the children].” She went on to state that DHR had provided services to establish the paternity of the children to see if the fathers would be a resource, but neither was. Further, the mother’s situation was unsuitable for returning the children to her and, therefore, the mother herself did not offer a viable alternative. T.W.W. and M.R.W. v. Lauderdale County Dep’t of Human Resources, 628 So.2d 761 (Aa.Civ.App.1993).
The trial court, in terminating parental rights, stated that it considered the testimony presented and the recommendations of the guardian ad litem. We conclude that there existed no viable alternative to termination of parental rights, and that termination serves the best interests of the children. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur.